# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EX REL. JESSE SLOAN, | ) ) ) |
| Plaintiff and Relator, | ) ) No. 15 C 458 |
| v. | ) ) Judge Jorge L. Alonso ) |
| WAUKEGAN STEEL, LLC, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Relator, Jesse Sloan, brings this case on behalf of the United States under the False Claims Act, 31 U.S.C. §§3729, *et seq.*, against his former employer, defendant Waukegan Steel, LLC ("Waukegan"). Defendant moves to dismiss. For the following reasons, the motion is denied.

## BACKGROUND

In February 2013, defendant Waukegan, a structural steel fabricator and contractor, accepted a "Purchase Order" from Charpie Korte Industries LLC ("Charpie Korte"), a general contractor hired by the United States Army Corps of Engineers ("USACE") to build an Army Reserve Center in Rockford, Illinois. (Compl. ¶ 5., ECF No. 1; *Id.* Ex. A, Purchase Order, ECF No. 1 at 10.) The order called for defendant to fabricate and install structural steel at the Rockford project. (*Id.* ¶ 5.) Relator, who was employed by defendant at the time, brings this suit claiming that defendant made false statements in order to receive payment for the job with government funds.

The Purchase Order specified that defendant's work was to "comply with the Contract Document, design criteria and function properly" and that defendant will produce "all reports on testing of systems, as required, to the Owner and Contractor." (Compl. ¶ 10 (citing Exhibit A, Purchase Order Attachment "A" ¶ 1.4, 1.11).) The "Design Specifications" of the contract between Charpie Korte and USACE (attached as Exhibit B) required contractors to adhere to a number of professional codes, including those of the American Institute of Steel Construction (AISC), the American Society for Testing and Materials (ASTM), and the American Welding Society (AWS). (Compl. ¶ 11; *id.* Ex. A ¶ 1.23.5; *id.* Ex. B, Design Specifications, at 47-49, ECF No. 1 at 50-52.) The "material certification" provision of the Design Specifications required as follows:

> The Fabricator shall provide an affidavit stating that the structural steel furnished meets the requirements of this specification. . . . [C]ertified reports of tests made by the Fabricator or a testing laboratory in accordance with ASTM A6 or A568, as applicable, shall constitute sufficient evidence of conformity with the above standards.

(*Id.* Ex. B at 49.)

Relator alleges that after delivering the steel Charpie Korte had ordered, defendant sought payment. (*Id*. ¶ 15.) Charpie Korte required defendant to submit "fabrication quality control and weld inspection certifications" to the Army Corps of Engineers before it would pay defendant for its work. (*Id.* ¶ 15.) According to relator, defendant did not have any such certificates. (*Id*. ¶¶ 15-17.) Wayne Greisbaum, president of Waukegan, allegedly asked relator to fabricate the inspection certifications so that defendant could send them to Charpie Korte for payment out of government funds. (*Id.* ¶ 17.)

When relator refused, Mr. Greisbaum allegedly approached another employee, Artemis Gonzales, who was not a qualified welding inspector, and requested that he fabricate the

2

certifications. (*Id.* ¶¶ 19-20.) According to relator, Mr. Gonzales fabricated the requested certifications, and Mr. Greisbaum signed them. (*Id.* ¶¶ 19-20.) Defendant then submitted the certifications in order to obtain payment, knowing they were false. (*Id.* ¶ 20, *see id.* Ex. C, Shop [Quality Control] Reports, In Process And Final Inspection of Fabricated Structural Steel.) Relator claims that, based on these facts, defendant "(a) knowingly presented and/or (b) caused to be presented, false or fraudulent claims to the United States government," which the government paid. (*Id.* ¶¶ 21-22.)

## LEGAL STANDARDS

A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Under federal notice-pleading standards, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the

3

complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Additionally, any claims asserted under the False Claims Act must comply with Federal Rule of Civil Procedure 9(b), which requires the pleading party to "state with particularity the circumstances constituting fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016). Although fraudulent or deceptive intent "may be alleged generally," Rule 9(b) requires a plaintiff (or in this case, relator) to describe the "circumstances" of the alleged fraud with "particularity" by including such information as the "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated," *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted).

A person is liable to the United States government under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) if he:

> **(A)** knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> **(B)** knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . .

§ 3729(a)(1)(A)-(B). [1]

---

[1] The Attorney General has primary authority for enforcing the FCA, but the FCA also includes a "so-called *qui tam* provision, which permits a private party, known as a 'relator,' to bring a civil action alleging fraud against the Government on its own behalf as well as on behalf of the United States," if the Attorney General declines to bring

To prove an FCA claim, a plaintiff must prove that (1) the defendant made a statement in order to receive money from the government, (2) the statement was false, (3) the defendant knew it was false, and (4) the statement was material to the decision to pay or approve the false claim. *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 716 (7th Cir. 2017); *United States ex rel. Sheet Metal Workers Int'l Ass'n, Local Union 20 v. Horning Invs., LLC*, 828 F.3d 587, 592 (7th Cir. 2016).

A plaintiff must plead all of the elements of the False Claims Act, including materiality, to survive a motion to dismiss. *United States ex rel. Escobar v. United Health Services, Inc.*, 136 S. Ct. 1989, 2003 (2016). To properly plead materiality, a plaintiff must show that the effect or likely behavior of the government, if it knew that the defendant had made false statements in seeking payment, would be to refuse payment. *Id.* at 2002. Evidence that "the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" may suffice, but is not necessary. *Id.*

## **ANALYSIS**

Defendant argues that relator's complaint is deficient because it fails to state a plausible claim by pleading all the elements of the claim with the requisite particularity. The Court disagrees. As the following discussion will show, relator has alleged sufficient facts to state an FCA claim.

First, relator alleges that defendant submitted the inspection and welding certifications in order to receive payment from Charpie Korte out of government funds. (*See* Compl. Ex. C at 1 (Cover Sheet) (indicating that defendant was submitting the certifications "at [Charpie Korte's]

---

an enforcement action himself. *Cause of Action*, 815 F.3d at 272; 31 U.S.C. § 3730(b). If the relator prevails, she receives a percentage of the recovery. 31 U.S.C. § 3730(d). In the instant case, the U.S. Government declined to intervene.

request").) As relator explains, the United States Supreme Court has held that "a subcontractor violates [the False Claims Act] if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim." *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 671 (2008). Importantly, Congress subsequently amended the False Claims Act to clarify that the defendant need not intend for the government *itself* to pay the subcontractor's claim; it would be "'contrary to Congress's original intent in passing the law'" if "'even when a subcontractor in a large Government contract knowingly submits a false claim to general contractor and gets paid with Government funds, there can be no liability unless the subcontractor intended to defraud the Federal Government, not just their general contractor.'" *See United States v. McMahon*, No. 11cv4620, 2015 WL 115763, at *7-8 (N.D. Ill. Jan. 5, 2015) (quoting S. Rep. 111-10, at 10-11 (2009), *reprinted in* 2009 U.S.C.C.A.N. 430, 438). That is precisely what relator has alleged. Taken as true, relator's allegations show that defendant made a statement in order to receive payment from the government, for purposes of the FCA.

Second, relator alleges that defendant personally asked him to fabricate the inspection and welding certifications so that it might receive payment from Charpie Korte. (Compl. ¶ 17.) After relator refused to fabricate the documents, defendant asked Mr. Artemis Gonzales to do so, and he obliged, without inspecting the steel in question. (*Id.* ¶¶ 19-20.) Relator has alleged that the statement was false (*i.e.*, it described inspections that did not actually take place) and that defendant made it with knowledge of its falsity. (*Id*. ¶¶ 19-20.)

As for materiality, it is plausible that the false statement was material to payment of the claim, based on the allegations of the complaint, the terms of the Design Specifications, and the terms of the Purchase Order. The Purchase Order between Charpie Korte and Waukegan states

that defendant will comply with the Design Specifications, according to the contract between Charpie Korte and the government. (*Id.* ¶ 10.) The contract requires fabricators to swear that the work meets the specifications, and it permits them to support that affirmation with reports of tests conducted by the fabricator. (*Id.* ¶ 12.) Relator alleges that Charpie Korte "required that the fabrication quality control and weld inspection certifications be supplied to the Army Corps of Engineers before any payment was to be made." (*Id.* ¶ 15.) Gonzales allegedly fabricated the inspection records and Wayne Griesbaum, Waukegan's president, signed them and "submitted them to obtain payment." (*Id.* ¶ 20.) Additionally, on their face, the inspections records show that they were requested by Charpie Korte. (*Id.* Ex. C at 1.) Based on the alleged sequence of events and the parties' course of conduct, a reasonable factfinder could conclude that the false statement was material to payment. The FCA targets fraud that causes the government to pay a claim when it otherwise would not. *Escobar*, 780 F.3d at 1999. Taken as true, the facts alleged in relator's complaint establish this type and degree of fraud.

Defendant argues that relator has not alleged the precise circumstances of the allegedly false claim with particularity, but the allegations answer the "who, what, where, and when" questions that relator must answer to state a claim with particularity under FRCP 9(b). *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). This argument is unpersuasive because relator has not only alleged who made the false statement, the approximate time of the false statement, and the circumstances surrounding the creation of the document that contains the false statement, but also actually attached a copy of the document itself to the complaint. As for the circumstances of the payment, it is true that the complaint is light on specific details in that regard, but relator would have no way of procuring an invoice or otherwise learning specific facts related to the precise form of payment defendant allegedly

7

received, and Rule 9(b) therefore does not require it of him. *See United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-55 (7th Cir. 2009). Relator has not left the Court to speculate about the presence of a claim or the occurrence of a government payment. *See United States ex rel. McGinnis v. OSF Healthcare Sys.*, No. 11-CV-1392, 2014 WL 2960344, at *8 (C.D. Ill. July 1, 2014). His claim is sufficient to meet the applicable pleading standard.

Defendant also argues that relator does not specify a precise legal theory of liability under the False Claims Act or even provide correct citations to the Act. But his "complaint [is] not required to include a legal theory, let alone a correct citation." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*., 836 F.3d 770, 784 (7th Cir. 2016); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005). Relator alleged the facts surrounding the false or misleading claim at issue, which is sufficient to provide defendant with the sort of notice that the Federal Rules of Civil Procedure require. "A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Relator was not required to specify in his complaint whether he sought to proceed under 31 U.S.C. § 3729(a)(1)(A) or § 3729(a)(1)(B), for example, and it is immaterial if he cites to one subsection and not the other; what matters is whether he alleges sufficient facts to state a plausible claim for relief, and he has done so.

## **CONCLUSION**

For the reasons set forth above, the Court denies defendant's motion to dismiss [23].

**SO ORDERED.**          **ENTERED: February 28, 2018**

_____
**HON. JORGE ALONSO**
**United States District Judge**